UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                          CRIMINAL NO. 07-06 (JRT/JSM)

        Plaintiff,

v.                                               <u>REPORT AND RECOMMENDATION</u>

CHAPPEL BROWN,

        Defendant.

JANIE S. MAYERON, U.S. Magistrate Judge

      The above matter came on for hearing before the undersigned upon Chappel Brown's Motions to Suppress Evidence [Docket No. 15], to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 16], and to Suppress Statements, Admissions and Answers [Docket No. 17].  Tricia Tingle, Assistant United States Attorney, appeared on behalf of the United States of America; Caroline Durham, Esq., appeared on behalf of the defendant, Chappel Brown, who was personally present.  The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

      Based upon the pleadings, the pre-hearing submissions, exhibits submitted at the hearings on February 28, 2007 and March 7, 2007, and testimony taken from Sergeant Paul Hatle, Sergeant David Burbank, William Ziegler, Jr., Officer Eric Madson, Special Agent Terry Horenburg, and Marissa Wynde, it is recommended that defendant's Motions to Suppress Evidence [Docket No. 15], to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 16], and to Suppress Statements, Admissions and Answers [Docket No. 17] be **DENIED**.

I.     **FACTUAL BACKGROUND**

Sergeant Paul Hatle of the Minneapolis Police Department testified that he was working off-duty at the Little Earth housing complex in Minneapolis, Minnesota the night of September 27, 2006.  Officer Eric Madson of the Minneapolis Police Department also works off-duty at the Little Earth housing community, and testified that he was working with Sergeant Hatle the night of September 27, 2006.

At approximately 3:30 a.m., Sergeant Hatle was inside the security office with his partner when an intoxicated man came to the office requesting assistance in retrieving some of his property from a residence in the housing complex.  Sergeant Hatle and Officer Madson helped the man retrieve a backpack from a nearby house.  As they were finishing up assisting the intoxicated man, Sergeant Hatle testified that he saw three individuals walk across a nearby parking lot and go into the townhome located at 2526 Ogema Place.  Sergeant Hatle recognized two of the individuals as people he had previously "trespassed."[1]  Those two individuals were the defendant, Chappel Brown, and Tyrone Anderson.  Officer Madson testified that he heard some loud whistling come from the group, which he believed, based on his experience, was a signal that the police were in the area.

Sergeant Hatle testified that defendant was first trespassed on September 7, 2006, in conjunction with a party at a house in Little Earth at 2526 Ogema Place.  When someone is trespassed, they are not permitted to return to the land for one year. Pictures of individuals who are trespassed from the Little Earth property are taken and

---

[1]     The term "trespass" as used by Little Earth security means that an individual has been notified that he or she is no longer permitted on the housing complex property.  If a person has been trespassed, they have been informed that they are not allowed to return to the property for one year.

2

placed on a trespass board in the security office at Little Earth so that other security officers know that these individuals are not permitted on the property.  Sergeant Hatle testified that he also runs background checks on people that he has trespassed.  On September 7, 2006, after he trespassed defendant, Sergeant Hatle ran a background check on defendant and learned that he was a convicted felon and that he had arrests for narcotics on his record.

After assisting the inebriated man with the retrieval of his property, Sergeant Hatle and Officer Madson went back to the security office to retrieve their squad car so that they could run a background check on the individuals they had seen on the computer in the squad car.   From this background check, the officers discovered that defendant had an outstanding felony warrant for a narcotics arrest.  Sergeant Hatle testified that they called police dispatch for help because they thought that defendant might try to run.

Sergeant Hatle and Officer Madson drove the squad car to 2526 Ogema Place, got out of the car and approached the house.  Sergeant Hatle testified that there was a set of blinds hanging vertically on the window of the front door of the house (also referred to as the east door) and that one of the middle blinds was missing, creating a gap in the blinds.  See Gov't Ex. 3.  Sergeant Hatle looked into the house through the gap and saw defendant and several others in the living room of the house.  Officer Madson went around to west side of the house in case defendant decided to flee out the back door.  Sergeant Schmidt arrived as backup and went around to the west side of the house, and Officer Madson returned to the east side of the house and joined Sergeant Hatle at the front door.  Officer Madson said he then looked into the living

room through the broken blind and saw defendant and one other male.  Defendant was sitting on a couch with his back to the door.  The couch was approximately three to four feet away from the door.

Sergeant Hatle and Officer Madson took turns looking through the blinds.  Officer Madson testified that at one point, defendant turned toward the door and Officer Madson thought defendant had seen him.  Officer Madson stated when defendant turned back around, he saw defendant manipulating something and heard defendant either loading or unloading a shotgun.[2]  Officer Madson told Sergeant Hatle that he thought defendant was loading a gun, and Officer Madson then pulled his own gun and pointed it at the door.  Sergeant Hatle also testified that when Officer Madson looked into the living room through the broken blind, Officer Madson said "I think he's loading a shotgun."  Sergeant Hatle looked through the gap in the blinds and saw the barrel of a shotgun on the left side of defendant and then saw him bend down.  At this point defendant was the only one in the living room. Sergeant Hatle testified that because defendant was an armed suspect and a convicted felon, he became concerned for his safety and the safety of the other officers.

At that point, Sergeant Hatle and Officer Madson knocked on the front door. They then saw defendant bending down as if to put something underneath the couch,

---

[2]     On cross-examination, Officer Madson testified that while he put in his incident report that he saw defendant manipulating something, and that he told Sergeant Hatle that it appeared that defendant was loading a gun, he did not put in his report or tell Sergeant Hatle that he heard a shotgun being loaded or unloaded.  The first time that Officer Madson mentioned to anyone that he heard a shotgun being loaded or unloaded was on February 6, 2007, when he met with the ATF agent assigned to the case, Special Agent Horenburg.  Officer Madson also said that he did not put in his report that he pulled his own gun and pointed it at the door when he heard what he thought was the loading or unloading of the gun.

but because he was sitting with his back to the door, the officers could not see his hands or what he was doing when he bent down.  Defendant came to the door, opened the blinds and looked out, closed the blinds, and ran through the living room up the stairs.

The officers tried to kick in the door but were unable to do so because the latch on the screen door was either broken or locked.  Sergeant Hatle ran around to the back door where Sergeant Schmidt was standing.  Officer Madson stayed at the front door until another backup officer, Officer White, arrived, at which point Officer Madson joined Sergeant Hatle and Sergeant Schmidt at the back door.  Looking through a small window in the back door, Officer Madson saw a person lying on a landing on the stairs.

The officers called the phone number for the house; however, the phone was disconnected.  The officers discussed getting a canine because canines can locate a person faster than a human officer, and the officers did not want a human officer to get shot.  However, there were no canines available at that hour.  Consequently, Sergeant Hatle and the other officers decided to go into the house and get defendant.  They yelled "police", and kicked open the west door.[3]  Officer Madson stated that after they saw defendant run up the stairs they were worried that he would destroy evidence, get guns, flee out the window or take a hostage.

As they entered the house, they saw an individual (later identified as "Harris") lying on a landing at the top of the stairs.  Officer Madson testified that he placed handcuffs on Harris and brought him downstairs.  The officers then cleared the house in

---

[3]     According to Sergeant Hatle, they did not knock on the back door first.  Officer Madson, on the other hand, testified that they did knock on the back door before kicking in the door.

a systematic fashion.  Sergeant Hatle checked the basement and cleared it, and moved up the stairs to the living room level.  As he was coming up the stairs from the basement, Sergeant Hatle saw a shotgun underneath the couch.  Officer Madson testified that Sergeant Hatle told him there was a shotgun under the couch.  The officers proceeded through the house.  The first bedroom door was closed, and Officer Madson kicked it open.  Sergeant Hatle saw a man and a woman in bed, Tyrone Anderson and Marissa Wynde.  The officers secured Anderson and Wynde.  Sergeant Hatle testified that Wynde was screaming, and she woke up her son, who was in another bedroom up one level.  Sergeant Hatle told the boy to come downstairs, which he did, and then yelled for defendant to come out of the last bedroom.  When he received no response, Sergeant Hatle entered the bedroom and saw defendant and another woman (later identified as Samantha Chapman) lying in a bed.  Sergeant Hatle told defendant to show his hands.  When defendant did not show his hands, Sergeant Hatle tasered him and then handcuffed him.  Sergeant Schmidt lifted the mattress on which defendant was laying, and discovered four shotgun shells underneath the mattress.  <u>See</u> Gov't Ex. 8.  The officers also discovered bindels of crack cocaine in the bedroom.  As the officers and defendant were going back through the living room, defendant asked for his shoes.  As his shoes were lying on the floor near the shotgun, the officers retrieved the shoes for defendant and placed them in the squad car.

On cross-examination, Sergeant Hatle stated that he did not mention to dispatch the shotgun or that they had an armed felon when he requested backup or a canine.  However, he notified Sergeant Schmidt that he had seen the barrel of a shotgun, and he also informed the other officers about the gun when they showed up at the residence.

On September 27, 2006, Sergeant David Burbank of the Minneapolis Police Department interviewed defendant at the Hennepin County Adult Detention Center after he was arrested.   After asking for some biographical information, Sergeant Burbank gave defendant the <u>Miranda</u> warnings.   The interview was recorded, and a copy of that interview and a transcript of the interview were admitted into evidence at the hearing as Government's exhibits 9 and 10, respectively.   Sergeant Burbank did not know if defendant was given any food or beverage during the interview, or if he was allowed to use the bathroom during the interview.   Sergeant Burbank was not in uniform but was dressed casually during the interview.   During the interview, defendant told Sergeant Burbank that he was at 2526 Ogema Place the night of September 27, 2006 with "Marissa, Samantha, Will and Tyrone."   Gov't Ex. 10, p. 2.   Defendant also stated that he was not Marissa's boyfriend, he did not stay at the residence and did not keep any property or clothes there.   <u>Id</u>. pp. 3-4.   When Sergeant Burbank asked defendant why no one answered the door when the police were knocking, defendant said "cuz I'm on trespassing."   <u>Id</u>.   Defendant acknowledged that he knew there was a warrant for his arrest.   <u>Id</u>.   Defendant also stated that there was a maroon curtain on the front door.   <u>Id</u>. p. 4.

Sergeant Burbank also stated that he had interviewed Marissa Wynde and Samantha Chapman while they were in custody.[4]   Both women told him that they were sleeping when the police came to the apartment.

---

[4]   Both Chapman and Wynde were arrested on September 27, 2006.   Wynde was held in custody on possible child endangerment charges.   Ultimately, Wynde was never charged with any crime for events arising from that night.

Marissa Wynde also testified on March 7, 2006.  Wynde was living at 2526 Ogema on September 27, 2006.  She testified that she had gone to bed before midnight and that she was asleep in bed when the police kicked in her bedroom door.  When she went to bed, there was a blanket nailed to the door frame, covering the door.  When she was brought downstairs with the police after she was arrested, the blanket was hanging halfway on the side of the door and had been knocked down.  She testified that there was no way for her to know who had moved the blanket after she went to bed.[5]

Defendant now moves the Court to suppress the evidence obtained as the result of the warrantless search and seizure and to suppress all statements given to police.

## II.   ANALYSIS

### A.   Motions to Suppress Evidence

#### 1.   Expectation of Privacy

The Government argues that because defendant had been trespassed from the Little Earth complex on September 7, 2006, he was at 2526 Ogema Place illegally on September 27, 2006 and has no right to assert a Fourth Amendment privacy interest in the residence.  Therefore, the Government contends that defendant lacks standing to challenge the search of the residence and the seizure of the shotgun.  In response, defendant maintains that he was an overnight guest of Marissa Wynde at 2526 Ogema

---

[5]   William Ziegler, Jr., executive director of Little Earth, testified that he hired Sergeant Hatle and gave him the authority to issue citations.  He testified that residents of the housing complex were permitted to have guests.  He also testified that the previous tenant of 2526 Ogema Place, Marissa Wynde, had been evicted because she had violated a zero tolerance policy utilized by Little Earth.  The reason that Wynde had been evicted was that illegal guns and drugs were found in her apartment.  Ziegler also testified that tenants are responsible for their guests, and can be evicted for the actions of their guests if the tenant has knowledge of the activity.

Place, and had a legitimate expectation of privacy and standing to contest the warrantless search of the residence.

"Fourth Amendment rights are personal and may not be asserted vicariously. . . ." United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994) (citing Rakas v. Illinois, 439 U.S. 128, 138-44 (1978)). The Supreme Court has held that the "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Minnesota v. Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 473 (1998) (citing Rakas, supra, at 143, 99 S.Ct. 421). A defendant lacks standing to challenge a search of a house where he had no legitimate expectation of privacy in the house. See United States v. Jones, 16 F.3d 275, 279 (8th Cir. 1994) (citing United States v. Gutberlet, 939 F.2d 643, 646 (8th Cir. 1991)). As such, a defendant must demonstrate "a legitimate expectation of privacy in the area searched or the item seized" in order have standing to challenge the constitutionality of the search and seizure. Gomez, 16 F.3d at 256 ("If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally."). "The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area searched." Gomez, 16 F.3d at 256, (citing Rakas, 439 U.S. at 130-31, n. 1 and United States v. Kiser, 948 F.2d 418, 423 (8th Cir. 1991)).

Notwithstanding the fact that defendant was the guest (overnight or otherwise) of Marissa Wynde, the Court finds that he had no legitimate expectation of privacy in 2526 Ogema Place because he was prohibited from being anywhere on the premises of Little Earth. "'[W]rongful' presence at the scene of a search would not enable a defendant to

object to the legality of the search." Rakas, 439 U.S. at 141, fn. 9 (quoting Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725 (1960)).

On September 7, 2006, defendant was notified that he was trespassed from the Little Earth property, and that he was not permitted to be on the property for one year. See Gov't Ex. 13.   During his interview with Sergeant Burbank, defendant acknowledged that he knew he was "on trespassing." Gov't Ex. 10, p. 3.   Therefore, defendant was wrongfully present at 2526 Ogema Place, and as such is unable to object to the legality of the search of the residence.   See U.S. v. Hunyady, 409 F.3d 297, 302 (6th Cir. 2005) (court found that defendant was a trespasser, was therefore wrongfully present on searched property and had no legitimate expectation of privacy); Pineda v. City of Houston, 124 F.Supp.2d 1057, 1075-1076 (S.D.Tex. 2000) (trespassers have no expectation of privacy protected by the Fourth Amendment); United States v. Sanchez, 635 F.2d 47, 64 (2d Cir. 1980) (mere trespasser has no Fourth Amendment protection in premises occupied wrongfully); Commonwealth v. Morrison, 429 Mass. 511, 514, 710 N.E.2d 584, 586 (1999) (notwithstanding status as an overnight guest, defendant was without standing to subject to search of residence as he was "the subject of a protective order forbidding his presence in the very premises;" the court also held that "[w]hat deprives this defendant of a reasonable expectation of privacy is not his status as a law violator in general, but the fact that he was under a specific and valid legal order not to be in this particular place.").   As a trespasser on Little Earth property, defendant had no expectation of privacy.

In addition to defendant's status as a trespasser, the circumstances of this case do not support a finding that defendant had a reasonable expectation of privacy in

Marissa Wynde's residence.  Factors relevant to determining whether defendant had a reasonable expectation of privacy include "ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case."  Gomez, 16 F.3d at 256 (citing U.S. v. Sanchez, 943 F.2d 110, 113 (1st Cir. 1991).

Here, defendant has failed to show that he had a reasonable expectation of privacy in Marissa Wynde's residence.  No evidence was presented to suggest that defendant had ownership or control over the residence, nor has he asserted that he owned or controlled the residence.  To the contrary, while there is evidence that defendant had been a visitor at the Ogema residence on September 7, 2006, on that date he was a guest at a party and as a result of what had occurred at the party, he was ultimately trespassed from the Little Earth property.  Further, defendant told Sergeant Burbank during his interview on September 27, 2006, that he did not stay at the residence and did not keep any clothing or property at the residence.  No evidence was offered to show that defendant was able to regulate access to the residence.  Finally, while defendant may have had a subjective anticipation of privacy when he entered the house on September 27, 2006, in light of the fact that he was not permitted to be on the property at all, any expectation of privacy was not objectively reasonable.

Defendant argues that he was an overnight guest of Marissa Wynde's and therefore had a reasonable expectation of privacy.  It is true that overnight houseguests have a legitimate expectation of privacy in their temporary quarters.  Minnesota v.

Olson, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).   However, the evidence presented at the hearing belies any such conclusion in this case.   First, defendant was seen by Sergeant Hatle and Officer Madson entering 2526 Ogema Place at approximately 3:20 a.m.   Second, although defendant was in bed when the officers arrested him, the officers had observed defendant awake and active in the living room of the house just minutes prior to his apprehension.   Third, there was no evidence, such as an overnight bag or change of clothing, or testimony to suggest that defendant was an overnight guest of Wynde's.   Finally, even if the Court were to find that defendant was an overnight guest of Wynde's, defendant's presence on the property was still wrongful.   The fact that Wynde gave permission for defendant to be in her home does not overcome the fact that Little Earth did not permit defendant to be in her home.   As a tenant of Little Earth, Wynde was subject to the rules and regulations of the Little Earth Housing Authority, who had trespassed defendant from the housing complex.   See Gov't Exs. 12 (governance policies of Little Earth); 15 (Marissa Wynde's lease agreement).

Defendant had been trespassed from the Little Earth property, his presence at 2526 Ogema Place was wrongful and the Court finds that he has not demonstrated that he had a reasonable expectation of privacy in the residence.   Therefore, the Court finds that defendant lacks standing to challenge the search of the premises and the seizure of the shotgun.

2.   Legality of Warrantless Entry

Even if this Court had found that defendant had standing to assert a Fourth Amendment challenge to the search of the residence, it would still find that the officers' warrantless entry into the residence was legal.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it requires probable cause for lawful searches and seizures.  U.S. CONST. amend. IV; see also Illinois v. Gates, 462 U.S. 213, 230, 235 (1983).  A warrantless search violates the Fourth Amendment unless an exception to the warrant requirement applies. Katz v. United States, 389 U.S. 347, 357 (1967).  For example, a "warrantless search does not violate the Fourth Amendment if knowing and voluntary consent" was given. United States v. Cedano-Medina, 366 F.3d 682, 684 (8th Cir. 2004) (citation omitted). In addition, a warrantless search is legal when justified by both probable cause and exigent circumstances.  See United States v. Walsh, 299 F.3d 729, 733 (8th Cir. 2002).

"It is a well-established constitutional principle that law enforcement officers may not enter a person's home without a warrant unless the entry is justified by exigent circumstances or the consent of the occupant."  United States v. Conner, 127 F.3d 663, 666 (8th Cir. 1997) (citing Steagald v. United States, 451 U.S. 204, 211, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38 (1981); Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980)).  "In evaluating whether a warrantless entry was justified by exigent circumstances, we consider the circumstances that confronted the police at the time of the entry."  U.S. v. Leveringston, 397 F.3d 1112, 1116 (8th Cir. 2005).

Here, the Court finds that exigent circumstances justified the warrantless entry and search of 2526 Ogema Place.  Sergeant Hatle and Officer Madson were aware that defendant had an active felony warrant for his arrest.  Sergeant Hatle testified that he thought defendant would try to run, and that in his experience individuals who have arrest warrants try to escape arrest.  See U.S. v. Duchi, 906 F.2d 1278, 1282 (8th Cir. 1990) (finding "the warrant requirement is suspended when – in the press of circumstances beyond a police officer's control – lives are threatened, a suspect's escape looms, or evidence is about to be destroyed") (citation omitted).  Further, the officers knew that defendant was a convicted felon.  Most importantly, they believed that defendant was in possession of a shotgun in the house.  Sergeant Hatle testified that he saw the barrel of a shotgun in defendant's hands, and Officer Madson testified that he heard the sound of a shotgun being either loaded or unloaded while defendant was manipulating something in his hands.  Sergeant Hatle testified that he became concerned for the safety of himself and the other officers after he saw the shotgun. Officer Madson stated that was worried that defendant would destroy evidence, gather other weapons, flee, or take hostages.  "Exigent circumstances exist… when law enforcement officials have a 'legitimate concern for the safety' of themselves or others." United States v. Vance, 53 F.3d 220, 222 (8th Cir. 1995) (citing United States v. Antwine, 873 F.2d 1144, 1147 (8th Cir.1989)).  These circumstances alone justified entry into the house without a warrant.

Upon entering the home, the officers conducted a protective sweep of the home. The sweep was also justified by exigent circumstances.  See United States v. Gill, 354 F.3d 963, 966, 969 (8th Cir. 2004) (exigent circumstances justify a warrantless sweep to

secure an apartment). The officers knew at least three people were present inside the house – they had seen three male individuals, including defendant, enter 2526 Ogema Place. They knew defendant was a convicted felon with an outstanding warrant. Furthermore, they had reason to believe that there was at least one gun in the house, and no way of knowing if there were more weapons. Given the number of occupants in the house, and the presence of a shotgun, the sweep of the home was justified by exigent circumstances. See United States v. Kaylor, 877 F.2d 658, 664 (8th Cir. 1989) (citations omitted) ("Courts have recognized an exception to the warrant requirement for sweep searches incident to arrest when police reasonably suspect that other persons could be on the premises who could pose a danger to the officers' safety . . . or destroy evidence."). In the course of their sweep of the residence, Sergeant Hatle saw the shotgun under the couch. Based on the foregoing analysis, the Court finds that exigent circumstances justified the warrantless entry and search of 2526 Ogema Place.

Because defendant was trespassing when he was at 2526 Ogema Place on the night of September 27, 2006, the Court finds that his presence there was wrongful and that he did not have a reasonable expectation of privacy in the residence. Consequently, defendant lacks standing to challenge the search of the premises and seizure of the shotgun. The Court also finds that the warrantless entry and protective sweep of the residence by the officers were valid and justified by exigent circumstances. Therefore, defendant's motions to suppress evidence should be denied.

### B.   Motion to Suppress Statements, Admissions and Answers

The only statements that defendant made were to Sergeant Burbank during an interview on September 27, 2006, after he was arrested and taken to the Hennepin

County Adult Detention Center.  In his motion, defendant claims that his Fourth, Fifth and Sixth Amendment rights were violated because any statements that he made during the interview were made without the benefit of counsel, and the statements were not given freely and voluntarily.[6]

Defendant was interviewed by Sergeant David Burbank in an interview room at the Hennepin County Adult Detention Center on September 27, 2006.  A tape of the interview and a transcribed copy of that interview were entered into evidence at the hearing on March 7, 2007 as Government's Exhibits 9 and 10.  The Court has listened to the tape and read the transcript in their entirety.

Defendant was not read his <u>Miranda</u> rights immediately at the beginning of the interview.   Sergeant Burbank and defendant discussed some personal information, including defendant's tattoos, whether defendant is associated with any gangs, and defendant's current address.    After this brief discussion, Sergeant Burbank read defendant his <u>Miranda</u> rights and asked if defendant was willing to speak with him. Defendant stated "sure."  Gov't Ex. 10, p. 2.  The interview lasted approximately eight minutes and ended when Sergeant Burbank told defendant he was done questioning him.  At no point during the interview did defendant request the presence of an attorney, ask to stop being questioned, ask to use the bathroom, or request any refreshments.

<u>Miranda v. Arizona</u> requires that an individual be advised of his right to be free from compulsory self incrimination and the right to the assistance of an attorney anytime the individual is taken into custody for questioning.  <u>Miranda v. Arizona</u>, 384 U.S. 436,

---

[6]     Defendant did not address this motion at the hearings on February 27, 2007 and March 7, 2007, nor did he address the motion in his post-hearing memorandum to the Court [Docket No. 32].

444 (1966);  see also  United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990).

Therefore, the protections afforded by Miranda are triggered when an individual "is both

in custody and being interrogated."  United States v. Hatten, 68 F.3d 257, 261 (8th Cir.

1995) (citing  United States v. Lawrence, 952 F.2d 1034, 1036 (8th Cir.), cert. denied,

503 U.S. 1011 (1992)).

As a preliminary matter, the Court notes that there is no dispute that defendant

was in custody at the time the statements were made, and that he was therefore entitled

to a reading of his Miranda rights.

The Court also finds that defendant voluntarily and knowingly waived his Miranda

rights.  "The determination of whether an accused has knowingly and voluntarily waived

his Miranda rights depends on all the facts of each particular case."  Stumes v. Solem,

752 F.2d 317, 320 (8th Cir. 1985) (citing  Fare v. Michael C., 442 U.S. 707, 724-25, 99

S.Ct. 2560, 2571-72, 61 L.Ed.2d 197 (1979)).  A waiver of Miranda rights is valid if it

satisfies the following criteria: "First, the relinquishment of the right must have been

voluntary in the sense that it was the product of a free and deliberate choice rather than

intimidation, coercion, or deception.  Second, the waiver must have been made with a

full awareness of both the nature of the right being abandoned and the consequences of

the decision to abandon it."  United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998)

(citing  United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994)) (citation omitted).

Only if the "'totality of the circumstances surrounding the interrogation'" reveals both an

uncoerced choice and the requisite level of comprehension may this Court properly

conclude that the defendant's Miranda rights have been waived.  Moran v. Burbine, 475

U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986) (quoting Fare, 442 U.S. at 725, 99 S.Ct. at 2571).

Here, there are no facts to indicate that defendant's waiver was not the product of free choice, and defendant has offered nothing to suggest that his Miranda rights were waived involuntarily, or that he was coerced into the waiver.  To the contrary, defendant indicated that he fully understood his rights and that he was willing to speak to Sergeant Burbank.  Further, at no time during the interview did defendant indicate that he was uncomfortable, state that he needed anything, ask for an attorney, or invoke his right to remain silent.  The circumstances surrounding defendant's interview were not coercive or intimidating in any manner.  The Court finds that defendant's Miranda rights were validly waived.  Therefore, defendant's motion to suppress statements should be denied.

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1.      Defendant's Motion to Suppress Evidence [Docket No. 15] be **DENIED**.

2.      Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 16] be DENIED.

3.      Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 17] be DENIED.


Dated:      March 20, 2007


                              *s/ Janie S. Mayeron*
                              JANIE S. MAYERON
                              United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **April 2, 2007** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.